

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
09/12/2007

| | | |
|---|---|---|
| **IN RE:** | § | |
| **IFS FINANCIAL CORPORATION** | § | **CASE NO: 02-39553** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |
| | § | |
| **W. STEVE SMITH, TRUSTEE** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 04-3789** |
| | § | **ADVERSARY NO. 04-3824** |
| **GONZALO ROMERO MATIAS,** *et al* | § | **ADVERSARY NO. 04-3845** |
| Defendant(s) | § | |

**MEMORANDUM OPINION**

For the reasons set forth below, the Court holds that the Court has personal jurisdiction over defendants Gonzalo Romero Matias ("Romero"), Minerva Bienes Racies, S.A. DE C.V. ("Minerva"), Mar Sur, S.A. DE C.V. ("Mar Sur"), South Sea Corp. ("South Sea"), North Sea Corp. ("North Sea"), Pacific Coast Investments ("Pacific"), and Larce, Inc. ("Larce"). For the reasons set forth below, the Court holds that the Court does not have personal jurisdiction over defendants Grupo Inmobiliaro De Tijuana, S.A. DE C.V. ("Grupo"), Palatina S.A. DE C.V. ("Palatina"), and Flaminia, S.A. DE C.V. ("Flaminia"). The Court grants Defendants' motion to dismiss with respect to defendants Grupo, Palatina and Flaminia and denies Defendants' motion to dismiss with respect to the remaining Defendants.

**Summary**

The IFS Financial Corporation ("IFS") case is a jointly administered case comprised of approximately 19 related entities (the "Interamericas Companies").[1] Under the jointly

---

[1] An involuntary petition was filed against each of these entities on approximately August 23, 2002. The Court entered an order on January 3, 2005, jointly administering these cases under a single docket. The relationship

administered case, W. Steve Smith, Trustee, has filed over 100 adversary proceedings.   The Trustee filed the present adversary on October 10, 2004.[2]

Defendant Romero is a shareholder in some of these related entities.  Between 1998 and 2002, millions of dollars were transferred out of the Debtor and related entities to various alleged insiders.  The Trustee alleges that these transfers were fraudulent transfers and defrauded and denuded the Interamericas Companies.  The Trustee contends that Romero effectuated and received such transfers and seeks to recover the transfers under various legal theories.

## Jurisdiction and Venue

This Court has jurisdiction of this matter under 28 U.S.C. § 1334.  Venue is proper in this District pursuant to 28 U.S.C. §1409.

## Background

IFS is part of the Interamericas Companies comprised of Interamericas, Ltd., Interamericas Investments, Ltd., Interamericas Holdings, Inc., Interamericas Corporation, Interamericas Financial Holdings, Ltd., Interamericas Financial Holdings Corp., IFS, and other related entities (the "Interamericas Companies").  The Interamericas Companies took in money, primarily from Mexican investors, in exchange for future payments to be made from the operation of Interamericas Companies' various businesses.[3]  Decisions concerning the operations of the Interamericas Companies were generally made by an Advisory Board, consisting primarily of Hugo Pimienta, Arturo Pimienta, Enrique Pimienta, Rodolfo Garcia and Peter Ulrich.

---

between these various entities is complex.   The Trustee sets forth an overview of the alleged "Interamericas Corporate Structure" in his amended complaint [docket no. 53].

[2] The Trustee's complaint names the following defendants: Gonzalo Romero Matias, Minerva Bienes Racies, S.A. de C.V., Mar Sur, S.A. de C.V., South Sea Corp., Larce, Inc., North Sea Corp., Pacific Coast Investments, Grupo Inmobiliario de Tijuana, S.A. de C.V., Palatina S.A. de C.V., and Flaminia, S.A. de C.V.

[3] The Interamericas Companies' businesses included the mortgage, banking, insurance, real estate, custom brokerage and transport forwarding, money exchange, construction/development and food industries.

Between 1998 and 2002, the assets of the Interamericas Companies, including IFS, were transferred between various IFS entities and ultimately transferred outside the companies. The Trustee alleges that most transfers went to insiders by way of the Interamericas Companies' bank accounts at Southwest Bank of Texas and Woodforest Bank. The Trustee alleges Romero, as a member of the Interamericas Companies' management team and as a major owner of IFS and other related entities, helped effectuate the transfers. The Trustee also contends that Romero received some of the disputed transfers, amounting to tens of millions of dollars. Romero may have received some of the transfers directly, but most are alleged to have occurred through the corporate Defendants. The Trustee characterizes the corporate Defendants as "shell," "sham" entities established solely as investment vehicles for Romero. The transfers form the basis of the Trustee's fraud, denuding, and fraudulent transfer claims against Defendants.

On December 15, 2005, defendants Romero, Minerva, Mar Sur, and Grupo filed a motion to dismiss for lack of personal jurisdiction, and alternatively sought dismissal on other grounds.

### Joint Trial

On April 24, 2006, the Court bifurcated consideration of the issues and scheduled a trial limited solely to the issue of whether the Court has personal jurisdiction over the Defendants. On November 6, 7, and 8, 2006, the Court conducted a trial on the issue of personal jurisdiction. The trial was jointly conducted in adversary proceedings 04-3789, 04-3824, and 04-3845.

### Burden of Proof

The Plaintiff, as the party invoking the jurisdiction of the Court, bears the burden of establishing that the Court has jurisdiction over the Defendants. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006); *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 625 (5th Cir. 1999). Initially, at the pre-evidentiary hearing stage in a case, a plaintiff need only

make a prima facie or threshold showing of jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000); *Guidry*, 188 F.3d at 625. All factual conflicts are resolved in the plaintiff's favor. *Id.* Ultimately, however, the plaintiff must prove by a preponderance of the evidence at a pretrial evidentiary hearing or at trial that the requisite jurisdictional facts exist. *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270-71, n.12 (5th Cir. 1983).

In this case, the Court held a bifurcated trial on the issue of personal jurisdiction. Consequently, the Plaintiff bears the burden of proof by a preponderance of the evidence.

## Applicable Law

The sole issue presently before the Court is whether the Court should exercise personal jurisdiction over the Defendants.

Personal jurisdiction analysis first requires the Court to consider whether a federal statute or rule defines the extent of the court's personal jurisdiction. *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 887 (Bankr. N.D. Ill. 2006) (citing *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004)). Federal Bankruptcy Rule 7004(f) defines personal jurisdiction over defendants in an adversary proceeding pending before a bankruptcy court. *In re Teknek, LLC*, 354 B.R. 181, 191. Rule 7004(f) authorizes personal jurisdiction to the extent allowed by the Fifth Amendment Due Process clause. *In re Teknek, LLC*, 354 B.R. at 192 (citing *Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 440, 442, 444–46 and n. 8 (Bankr. S.D. N.Y. 2004); *In re Federalpha Steel LLC*, 341 B.R. at 884; *North v. Winterthur Assurances (In re North)*, 279 B.R. 845, 851–53 (Bankr. D. Ariz. 2002). Consequently, a bankruptcy court's personal jurisdiction is not affected by a state's long-arm statute or constitution. *In re Teknek, LLC*, 354 B.R. at 193.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when: (1) the defendant has "minimum contacts" with the forum; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006). "Minimum contacts" are required to preserve a defendant's Due Process right not to be haled into a forum without "fair warning" that prior conduct subjected them to that forum's jurisdiction. *Burger King Corp.*, 471 U.S. at 471–72. The plaintiff bears the burden of establishing "minimum contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). If successful, the burden then shifts to the defendant to establish that the exercise of jurisdiction would be unfair or unreasonable. *Id.*

The "minimum-contacts" analysis used in diversity cases is applied to a foreign defendant in bankruptcy court adversary proceedings based on federal law, with one exception. Instead of looking only at the defendant's contacts within the forum state, courts aggregate the defendant's contacts within the entire United States. *In re Teknek*, 354 B.R. at 192*; see also Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996) ("When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States."); *United States v. De Ortiz*, 910 F.2d 376, 382 (7th Cir. 1990). "To satisfy due process, then, a defendant . . . need have only minimum 'national contacts.'" *In re Federalpha Steel LLC*, 341 B.R. at 888 (quoting *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991)).

Courts have not crafted a neat, mechanical formula for defining the required "minimum contacts."  Indeed, the Supreme Court has specifically repudiated a mechanical approach. *Burger King Corp.*, 471 U.S. at 485–86 (rejecting "talismanic jurisdictional formulas" for personal jurisdiction analysis).  However, generally, personal jurisdiction exists if a defendant intentionally engages in conduct within or affecting the forum state and the conduct was significant enough that the defendant should not be surprised to have the consequences of his conduct adjudicated within the forum state's courts.  The Supreme Court has stated that the contacts must be "purposeful" as opposed to "fortuitous" or "attenuated," and the contacts must be significant enough that a reasonable person would foresee that their "conduct and connection with the forum State are such that he should reasonably anticipate being haled into the court there." *Burger King Corp.*, 471 U.S. at 474 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 299 (1980)). *See also* MOORE'S FEDERAL PRACTICE, § 108.42[3][b][i] (3d. ed. 2007) ("intentionally causing an effect in the forum state constitutes purposeful availment") (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

A defendant's "minimum contacts" may give rise to either general personal jurisdiction or specific personal jurisdiction.  A court with general jurisdiction over a non-forum defendant has jurisdiction to adjudicate any claim against that defendant, including claims that do not arise in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).  A court may exercise general jurisdiction over any action brought against a defendant if the defendant's contacts with the forum state are "continuous and systematic."  *Seiferth*, 472 F.3d at 271.  When examining a general personal jurisdiction issue, courts consider the defendant's contacts occurring within the forum "over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc., v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th

Cir. 1999) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996)).

Absent general personal jurisdiction, the Court may still exercise limited specific personal jurisdiction over a defendant when a defendant's contacts with the forum location arise from, or are directly related to, the cause of action. *Burger King Corp.*, 471 U.S. at 472–73. Unlike general personal jurisdiction, specific personal jurisdiction does not extend to any claim against the non-forum defendant. Specific personal jurisdiction is limited to causes of action that arise from conduct that occurred in or was directed to the forum location. *Burger King Corp.*, 471 U.S. at 473 n. 15.

### Analysis

In order for the Court to exercise personal jurisdiction over Defendants, the Trustee must establish that Defendants' contacts with the forum support either general or specific jurisdiction. The Trustee contends that this Court has general and specific personal jurisdiction over Defendants based on their involvement with the Interamericas Companies. The Interamericas Companies included Texas corporations, were governed by an Advisory board that met in Texas, effectuated most receipt and payment of funds through Texas bank accounts, and had registered agents and offices in Texas. The Defendants' alleged involvement with the Interamericas Companies included investment in Interamericas Companies' entities, control over the Interamericas Companies' structure, participation in the defrauding and denuding of the Interamericas Companies, and receipt of fraudulent transfers from the Interamericas Companies.

The Court holds that the Court has personal jurisdiction over defendants Minerva, Mar Sur, South Sea, Pacific, Larce, and North Sea based upon their direct consent to personal jurisdiction in this forum. The above corporate defendants all signed agreements with forum-

selection clauses providing for personal jurisdiction in this forum.   The Court holds that the Court has personal jurisdiction over defendant Romero primarily based upon his grant of power of attorney to an Advisory Board member of the IFS Companies.   The Court analyzes the personal jurisdiction issue with respect to Romero and the corporate Defendants separately.   The Court first describes the corporate Defendants' and Romero's contacts with Texas, and then considers whether those contacts are sufficient for this Court to exercise general or specific personal jurisdiction.

### A. Contacts

#### *1. Corporate Defendants*

The Trustee contends that this Court has general and specific personal jurisdiction over nine corporate entities in which Romero had a majority or 100% ownership interest.   Four of the corporate entities (South Sea, Pacific, North Sea, and Larce) were created by the Interamericas Companies' general counsel.   The Trustee alleges that the corporations were "sham" "shell" corporations created by the Interamericas Companies to serve as investment vehicles through which Romero could borrow/receive funds from the Interamericas Companies.   The entities' sole assets were loans acquired from the Interamericas Companies' insurance corporations.   Moreover, all principal and interest payments were made by the Interamericas Companies through the Interamericas Companies' Texas bank accounts.   The Trustee's allegations of fraudulent transfers, fraud, denuding, and conversion all arise from these loans and the payments made on the loans by the Interamericas Companies.   Neither Romero nor any of the corporate Defendants appear to have ever made a payment on the loans.   Of particular importance for the personal jurisdiction issue, the loan agreements contained forum-selection clauses explicitly consenting to Texas court jurisdiction.

**South Sea.** The Trustee has proven, by a preponderance of the evidence, the following allegations with respect to South Sea's contacts with Texas and the United States:

> • South Sea was formed by Interamerica's general counsel for the purpose of allowing South Sea to transact business with the Interamericas companies on behalf of Romero or Romero's Mexican businesses.

> ● South Sea executed a loan restructuring agreement in which South Sea consented to Texas and United States jurisdiction. In 1999, South Sea, Mar Sur (a Mexican corporation in which Romero held a majority interest), and AFL (an Interamericas Companies entity) executed a loan restructuring agreement. The agreement provided that: "For everything related to this Agreement, the Parties expressly submit to the ***federal competent courts of the State of Texas*** and to the competent courts of the United Mexican States ***at the election of AFL***, expressly waiving any other jurisdiction that may correspond to the parties by virtue of their present or future domiciles." The Trustee has elected a Texas forum by filing a complaint in this Court.[4]

> ● South Sea received funds drawn upon a Texas bank account. Pursuant to various promissory notes with South Sea, AFL transferred over $10,000,000 to a Texas bank account. The account was owned by INV Capital Limited, an Interamericas Company entity. The account plays a substantial role in this dispute because the Trustee alleges that (i) INV held the principal amount for the benefit of South Sea; and (ii) South Sea received the "loans" from this account.

**Pacific.** The Trustee has proven, by a preponderance of the evidence, the following allegations with respect to Pacific's contacts with Texas and the United States:

> • Pacific was formed by Interamerica's general counsel for the purpose of allowing Pacific to transact business with the Interamericas companies on behalf of Romero or Romero's Mexican businesses.

> ● Pacific executed a promissory note in Texas, in which Pacific consented to the application of Texas law. On December 3, 1998, Pacific executed a $5,000,000 promissory note in in favor of Bradford National Life Insurance Company (an Interamericas Companies entity). The promissory note states: "This Note and all instruments, documents, and other writings evidencing, securing, or pertaining to the indebtedness evidenced hereby have been delivered in the State of Texas and shall be construed in accordance with and governed by the applicable laws of the United States of America and the applicable laws of the State of Texas . . ." The note also stated that Pacific "agrees and consents to all of the terms, provisions,

---

[4] A copy of the restructuring agreement was not admitted into evidence because a signature was missing. However, the Court did hear testimony with respect to the restructuring agreement and admitted a resolution signed by South Sea and Mar Sur approving all provisions of the restructuring agreement.

agreements, assignments and other writings now or hereafter securing or pertaining to the loan evidenced by this Note."

**Larce.** The Trustee has proven, by a preponderance of the evidence, the following allegations with respect to Larce's contacts with Texas and the United States:

• Larce was formed by Interamerica's general counsel for the purpose of allowing Larce to transact business with the Interamericas companies on behalf of Grupo.

• Larce executed a promissory note in which Larce consented to Texas and United States jurisdiction. In late 1999, Larce executed a promissory note in the amount of $5,430,127.40 in favor of AFL. The promissory note contained a forum-selection clause stating "For everything related to this Promissory Note, the Maker and the Holder hereby ***expressly submit themselves to the jurisdiction of the federal courts of the Southern District of the State of Texas, Houston*** Division or to the competent courts of the City of Mexico, Federal District, United Mexican States, ***at the election of the Holder*** thereof, expressly waiving any other jurisdiction that may correspond to them by virtue of their present or future domiciles, or any other reason."

• Larce executed a September 30, 1999 loan restructuring agreement consenting to Texas and United States jurisdiction. In February of 2002, Larce, Minerva (a Mexican corporation), and AFL entered a restructuring agreement on Larce's 1999 promissory note. The agreement contained a forum-selection clause identical to the clause contained in the South Sea restructuring agreement.

**North Sea.** The Trustee has proven, by a preponderance of the evidence, the following allegations with respect to North Sea's contacts with Texas and the United States:

• North Sea was formed by Interamerica's general counsel for the purpose of allowing North Sea to transact business with the Interamericas companies on behalf of major investors.

• North Sea executed a promissory note in Texas, in which North Sea consented to apply Texas law. On June 22, 1999, North Sea executed a promissory note in the amount of $5,000,000 in favor of AFL. The Promissory note stated that payments were to be made to the Interamericas Companies' main Texas address. The note also contained a choice-of-law clause stating: "This promissory note, and all instruments, documents and other writings evidencing, securing or pertaining to the indebtedness evidenced hereby have been delivered in Harris County, Texas, and shall be construed in accordance with and governed by the applicable laws of the United States of America and the applicable laws of the State of Texas . . . "

● A security agreement consenting to Texas jurisdiction for certain activities and to the application of Texas law.  On June 22, 1999, North Sea, AFL, and Romero executed a security agreement whereby Romero pledged a $5,300,000 promissory note executed in his favor.  The $5,300,000 note was pledged to Romero from Palatina (a Mexican corporation) and secured by stock of a company called Flaminia (a Mexican corporation).   The security agreement contained four provisions that the Trustee alleges are relevant to jurisdiction:

> (1) Interest was to be determined "by the applicable law of the United States of America or the State of Texas."

> (2) Rights and remedies were to be determined by "the Uniform Commercial Code in force in the State of Texas."

> (3) Sale of the collateral would be commercially reasonable if "notice of such sale [was provided] at the Montgomery County Courthouse in Montgomery County, Texas . . . " and notice was sent to "persons legally entitled thereto under the Uniform Commercial Code of Texas . . ." The Agreement also provided that "no sale shall be required to be held outside of Montgomery County, Texas . . ."

> (4)  Terms used in the security agreement were to be defined according to the Texas Uniform Commercial Code.

> (5) The agreement was to be governed by the law "of the State of Texas."

**Mar Sur.** The Trustee has proven, by a preponderance of the evidence, the following allegations with respect to contacts that Mar Sur had with Texas and the United States:

> ● Mar Sur's stock secured South Sea's 1999 promissory note.  Mar Sur is a Mexican corporation.  Romero is a majority owner of Mar Sur.

> ● Mar Sur executed a 1999 loan restructuring agreement between South Sea, Mar Sur, and AFL in which Mar Sur consented to Texas and United States jurisdiction. Specifically, the agreement provided: "For everything related to this Agreement, the Parties ***expressly submit to the federal competent courts of the State of Texas*** and to the competent courts of the United Mexican States ***at the election of AFL***, expressly waiving any other jurisdiction that may correspond to the parties by virtue of their present or future domiciles."  The Trustee has elected a Texas forum by filing a complaint in this Court.

**Minerva.** The Trustee has proven, by a preponderance of the evidence, the following allegations with respect to Minerva's contacts with Texas and the United States:

● Minerva's stock secured Larce's 1999 promissory note.  Minerva is a Mexican corporation.

● Minerva executed a 1999 restructuring agreement between Larce, AFL, and Minerva in which Minerva consented to Texas and United States jurisdiction.

The Trustee's complaint lists three additional corporate defendants that were owned by Romero (Grupo,  Palatina, and Flamina).  The Trustee contends that this Court has general and specific personal jurisdiction over these corporate Defendants based on financial transactions entered into with the Interamericas Companies, participation in the defrauding and denuding of the Interamericas Companies, and as beneficiaries of fraudulent transfers made by the Interamericas Companies' Advisory Board.

**Grupo.** The Trustee alleges that Grupo had the following contacts with Texas and the United States:

● Receipt of a fraudulent transfer.  MP Corporation was a Texas corporation owned by the IFS structure.  MP owned approximately 31% of Grupo (a Mexican entity).  Romero owned the remainder.  In late 2001, the Trustee alleges that MP granted power of attorney over its interest in Grupo to Romero's representative of Minerva and Romero's children.  The Trustee alleges that the grant of power of attorney effectively granted Romero MP's interest in Grupo and constituted a fraudulent transfer, as well as participation in the fraud and denuding of the Interamericas Companies.

**Palatina.** Palatina's ties to Texas are limited to its participation in the 1999 security agreement between North Sea and AFL.

**Flaminia.** Flaminia's ties to Texas are also limited to its participation in the 1999 security agreement between North Sea and AFL

### *2. Romero*.

The Trustee has proven, by a preponderance of the evidence, the following allegations with respect to Romero's contacts with Texas and the United States:

● Romero had substantial investments within the Interamericas Companies.  The evidence suggested that Romero invested up to $80 million dollars in the Interamericas Companies.  Romero's initial investment made him a majority shareholder, and Romero made subsequent investments throughout the 1990's to retain his majority position.

● Romero granted power of attorney to Enrique Pimienta, an Interamericas Companies' Advisory Board member.  The Trustee and Romero dispute when the power of attorney was created, the scope of that power, and when the power was terminated.  Although the Court reserves a portion of that dispute for the final trial, the Trustee proved by a preponderance of the evidence that the power of attorney was used by Enrique Pimienta with respect to the Interamericas Companies.

● Romero made business and social trips to Texas and other states.

● Romero made telephone communications with Hugo and Enrique Pimienta concerning Interamericas Companies' business.

● Romero received payments from the Interamericas Companies.  The record indicated that Romero received numerous payments from the Interamericas Companies, including a $1 million kidnap ransom, and $15,000 yearly salary paid for several years.  Most if not all of these funds were paid from a Texas bank account owned by the Interamericas Companies.

● Romero executed a security agreement consenting to the application of Texas law and to certain transactions in Texas.  On June 22, 1999, North Sea, AFL, and Romero executed a security agreement whereby Romero pledged a $5,300,000 promissory note executed in his favor.  The $5,300,000 note was pledged to Romero from Palatina (a Mexican corporation) and secured by stock of a company called Flaminia (a Mexican corporation).  The security agreement contained four separate provisions that the Trustee alleges relate to jurisdiction:

> (1) Interest was to be determined "by the applicable law of the United States of America or the State of Texas."

> (2) Rights and remedies were to be determined by "the Uniform Commercial Code in force in the State of Texas."

> (3) Sale of the collateral would be commercially reasonable if "notice of such sale [was provided] at the Montgomery County Courthouse in Montgomery County, Texas . . . " and notice was sent to "persons legally entitled thereto under the Uniform Commercial Code of Texas . . ." The Agreement also provided that "no sale shall be required to be held outside of Montgomery County, Texas . . ."

(4)  Terms used in the security agreement were to be defined according to the Texas Uniform Commercial Code.

(5) The agreement was to be governed by the law "of the State of Texas."

**B. Jurisdiction**

*1. Corporate Defendants*

The Supreme Court has stated that "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–704 (1982); *Burger King Corp.*, 471 U.S. at 473 n. 14.  The right can be waived by contractual provisions that "submit to the jurisdiction of a given court." *Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 703–04 (quoting *Nat. Equip. Rental, Ltd. v. Szukhent* (1964)).

Three conditions must be met before a forum-selection clause can be enforced.  First, the clause must have been "reasonably communicated to the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).  Second, the clause may not be the product of "fraud or overreaching." *Id.* (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  Third, enforcement of the clause must not be "unreasonable and unjust." *Id.*

South Sea, Larce, Mar Sur, and Minerva all entered into promissory notes and/or security agreements and/or restructuring agreements that explicitly stated that Texas law and courts would or could govern any disputes arising out of the agreements.  The forum-selection clauses were all clearly printed and accessible.  Defendants do not contend that any of the agreements or provisions within the agreements were induced by fraud or overreaching.  As the Court discusses later in the opinion, enforcement is not unfair or unjust.  By signing notes and security agreements with such forum selection clauses, defendants South Sea, Larce, Mar Sur, and Minerva effectively consented to United States jurisdiction.  At the very least, the Defendants

14

can not reasonably argue that it was "unforeseeable" that they would have to litigate their rights and obligations under agreements that explicitly provide for a Texas forum.

Nevertheless, Defendants contend personal jurisdiction over Mar Sur and Minerva can not be based on the loan documents signed by Mar Sur and Minerva. Within the loan documents, Mar Sur and Minerva pledged Mar Sur and Minerva stock. Defendants contend that corporations can not pledge their own stock. Rather, only the shareholders can pledge the stock. That is a substantive issue not related to the question of personal jurisdiction. Mar Sur and Minerva consented to jurisdiction in the United States. If there is a substantive defense to the agreements, then the substantive defense should be presented to this Court. The Court declines to base its jurisdictional determination on a substantive defense asserted to an agreement that—on its face—contains a consent to jurisdiction.

Though the Trustee submitted evidence of restructuring and security agreements entered into by Pacific and North Sea and consenting to Texas and United States jurisdiction, the Court did not admit the agreements. Pacific and North Sea did receive "loans" from Interamericas Companies' entities and Texas bank accounts. The loan agreements were delivered in Texas and provided that Texas law would govern the agreements. However, receipt of funds from a Texas entity or Texas bank account, without more, is insufficient to establish personal jurisdiction. The loans may have been fraudulent transfers. The Trustee has suggested that Pacific and North Sea did not have assets independent of the loans and never made payments on the loans. However, the Court has not yet held a trial on the merits of the Trustee's claims and the Trustee has not otherwise sufficiently met his burden on the merits.[5]

---

[5] The Court is not ruling on whether the Trustee will prevail on his corporate veil piercing claim against Romero as the owner of the dismissed entities. If the Trustee prevails on the merits and proves that Romero and a dismissed defendant are alter egos, Romero could be held liable for a fraudulent conveyance ostensibly made to a dismissed alter-ego defendant.

Nevertheless, the Court concludes that personal jurisdiction exists over North Sea and Pacific.  It is undisputed that these two corporations were formed by Interamericas' general counsel.  It is also undisputed that the two corporations were formed for the purpose of giving major investors, including Romero and Mar Sur, an investment vehicle with Interamericas.  The issue before the Court is whether it is reasonable for these two corporations to be haled into court in the United States in a lawsuit seeking to avoid transfers to those corporations by Interamericas.  Because the central issue in the litigation against these entities arises from the kernel of their creation, the Court finds that it is reasonable for these two corporations to be haled into court in the United States on that issue.

The Trustee has not met his burden for establishing personal jurisdiction over Grupo, Palatina and Flamina.  These Defendants did not sign a loan document consenting to Texas Jurisdiction or take other action that reasonably subjects them to being haled into a United States Court.

Grupo was a Mexican, not a Texas corporation.  Grupo's only tie with Texas was past ownership by MP Corporation (a Texas corporation and part of the Interamerica Companies).  The Trustee asserts that the Court has personal jurisdiction over Grupo based on Grupo's receipt of power of attorney from MP Corporation for MP Corporation's approximately 31% interest in Grupo.  The Trustee does not explain and the Court does not see how receipt of power of attorney for stock in a Mexican corporation gives the Court personal jurisdiction over the Mexican corporation.

Similarly, the Trustee does not explain and the Court does not see how the Court can exercise personal jurisdiction over Palatina and Flaminia.  Palatina and Flaminia are Mexican corporations.  The Trustee's assertion of personal jurisdiction over Palatina and Flaminia is

16

limited to a promissory note Palatina allegedly executed in favor of Romero.  The note was secured by Flaminia stock.  The note's only relation to the present adversary proceeding is that the note was offered by Romero as collateral securing a promissory note between North Sea, AFL, and Romero.  Palatina may have purposefully transacted with Romero, but there is no evidence that Palatina ever purposefully transacted with the Interamericas Companies or any other Texas entity.  Flaminia's contacts, limited to its stock securing the Palatina note, are even further removed from Texas.  Accordingly, the Trustee has not shown by a preponderance of the evidence that Palatina and Flaminia had contacts with Texas sufficient for this Court to assert personal jurisdiction.

### 2. Romero.

Romero's contacts with Texas are sufficient to establish personal jurisdiction.  His direct contacts with Texas are insufficient to establish general personal jurisdiction.  Nevertheless, specific personal jurisdiction over Romero exists based on Romero's indirect ties with Texas. Romero granted a general power of attorney to Enrique Pimienta to represent Romero's interests in the Interamericas Companies.  Enrique Pimienta served on the Interamericas Companies Advisory Board.  Enrique Pimienta's contacts with Texas, in his capacity as Romero's agent and as an Advisory Board member, were extensive.

### i. Absence of General Personal Jurisdiction

When a defendant's contacts are "continuous and systematic," a court may exercise general jurisdiction over any action brought against that defendant, even if the action is unrelated to the defendant's contacts with the forum.  *Seiferth*, 472 F.3d at 271.  The evidence demonstrates that Romero's direct contacts with the United States were sporadic and insufficient for general personal jurisdiction.

Though Romero may have been a substantial investor in the Interamericas Companies, general jurisdiction does not exist based on passive investment in a corporation. *Constr. Aggregates, Inc. v. Senior Commodity Co., S.A.M.*, 860 F. Supp. 1176, 1180 (E.D. Tex. 1994) (citing *Grimes v. Vitalink Commc.'ns Corp.*, 17 F.3d 1553, 1559 (3rd Cir. 1994)). Romero may have received funds from an Interamericas Companies' Texas bank account. However, the receipt of funds from a forum-state bank account "is of negligible significance" for determining personal jurisdiction. *Helicopteros*, 466 U.S. at 416–417. Romero's contacts were not continuous and systematic and therefore do not confer general jurisdiction over Romero.

### ii. Presence of Specific Personal Jurisdiction

Romero's participation in the fraud, denuding, and fraudulent transfer claims asserted by the Trustee would be sufficient for specific personal jurisdiction limited to those claims. *Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001) ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."); *Brown v. Flowers Indus.*, 688 F.2d 328, 332–33 (5th Cir. 1982) (holding that personal jurisdiction existed over defendants whose contacts were limited to mail and telephone communications made with an intent to defraud). However, the merits of the fraud, denuding, and fraudulent transfer claims have not yet been decided. Accordingly, assertion of specific personal jurisdiction based upon Romero's involvement in the Trustee's fraud, denuding, and fraudulent transfer claims is not proper at this stage in the litigation.

Nonetheless, personal jurisdiction is present if Romero gave another authority to act on his behalf and the agent's contacts in his agency capacity are sufficient to establish specific personal jurisdiction. The Supreme Court has held that "when commercial activities are 'carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at

least where he is a 'primary participant' in the enterprise and has acted purposefully in directing those activities." *Burger King Corp.*, 471 U.S. at 480, n.22 (citing *Int'l Shoe Co.*, 326 U.S. at 320; *Calder v. Jones*, 465 U.S. at 790); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42, 55 (1st Cir. 2002) ("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal."); *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1335 (2d Cir. 2001) ("activities conducted by in-state party are not attributable to an out-of-state defendant unless the in-state party is regarded as an agent of the defendant"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir. 1993); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990); *Williamson v. Petrosakh Joint Stock Co.*, 952 F. Supp. 495, 498 (S.D. Tex. 1997) ("Actions by an agent can be used to establish jurisdiction over the principal.").

A grant of power of attorney creates an agency relationship between the principal granting the power and the agent authorized to exercise the power. *In re Cantrell*, 88 F.3d 344, 346–47 (5th Cir. 1996); *Int'l Strategies Group, Ltd. v. Greenberg*, 482 F.3d 1, 7–8 (1st Cir. 2007).

Romero gave Enrique Pimienta power of attorney to act on Romero's behalf personally, and with respect to corporate Defendants owned by Romero.  The parties dispute when the power was granted, the scope of the power, and when the power was terminated.  The Trustee alleges that Romero gave Hugo and Enrique Pimienta power of attorney to vote his shares on the Interameicas Companies' Advisory Board.  Romero denies that any such power of attorney was granted.  Furthermore, Romero contends that, as a matter of law, an individual can not grant another power of attorney to act for the principal on a company's board of directors.

Based on the evidence before the Court, the Court concludes that Romero gave Enrique Pimienta full power of attorney in the early 1980's.  In a deposition, Romero acknowledged that

with respect to corporate defendants Romero owned, "I gave him all power of attorney or powers in authorities and he managed everything without asking me anything." Romero also stated that with respect to the personal power of attorney, "I gave him or I granted him all powers in authorities."

Romero and Enrique Pimienta first met in the mid 1970's and developed a relationship of trust. Enrique Pimienta was an accountant and provided accounting services for Romero's Mexican businesses during the 1970's and 1980's. In the mid 1980's, Enrique Pimienta began providing investment advice. Near this time, Romero also granted Enrique Pimienta his general power of attorney. The power of attorney was limited in the mid 1990's but did not terminate Enrique Pimienta's exercise of authority with respect to Romero's involvement with the Interamericas Companies. The limited power of attorney was terminated in late 2001 or early 2002. Romero also granted Enrique Pimienta power of attorney to act on behalf of many of the corporate Defendants owned by Romero. That power of attorney was also terminated between 2001 and 2002.

Enrique Pimienta's contacts with the United States (and Texas, in particular) as a member of the Interamericas Companies' Advisory Board and as an agent of Romero, were extensive. Enrique Pimienta was one of five members of the Interamericas Companies' Advisory Board. The Board made all significant business decisions affecting the Interamericas Companies.[6] Among other management decisions, the Advisory Board determined rates of returns to be paid on investment vehicles, decided where capital investments were made, and authorized all transfers from the Interamericas Companies' Texas bank accounts. The Advisory Board also

---

[6] The Interamericas Companies had officers and directors separate from the Advisory Board. However, the separate officers and directors only implemented the decisions of the Advisory Board. Directors and officers did not dispute directives given from the Advisory Board. If an officer or director did not implement a directive from the Advisory Board, that person would no longer be employed by the Interamericas Companies.

approved the transfers discussed in this opinion and that form the basis for the Trustee's fraud, denuding, and fraudulent transfer claims.  Such contacts, carried out by Enrique Pimienta while serving on the Advisory Board, unquestionably give rise to specific personal jurisdiction over Enrique Pimienta with respect to the Trustee's claims. *See In re Teknek, LLC*, 354 B.R. at 198–200 (finding specific personal jurisdiction over corporate insiders who "established a limited liability company in [the forum state], used that entity to generate profits, used American banks as the focal point for those funds, and then transferred all such funds through this focal point to themselves individually, leaving the limited liability company within the U.S. forum with virtually no money or assets to satisfy its creditors . . . ").

The Advisory Board met in Texas at the Interamericas Companies' Texas headquarters. Transfers involved and/or affected Texas entities.  Many transfers approved by the Advisory Board and capital invested in the Interamericas Companies passed through Texas bank accounts. Enrique Pimienta's actions as an Advisory Board member are imputed to Romero through their agency relationship.  Consequently, Romero is subject to personal jurisdiction in this forum.

Enrique's power of attorney remained in effect during the occurrence of many, if not all, the transfers that form the basis of the Trustee's complaint.  Almost all of the Interamericas Companies' assets were siphoned off to various entities within a two year period, starting in late 1998.  Even if Enrique's power of attorney was terminated prior to some disputed transfers, the personal jurisdiction analysis is not affected.  Although personal jurisdiction exists pursuant to conduct resulting from the power of attorney, the fact that the power of attorney was terminated does not automatically result in termination of personal jurisdiction.  Jurisdiction may still exist for those causes of action that arise from acts taken pursuant to the power of attorney. *Nowak*, 94 F.3d 708, 716 (1st Cir. 1996) (noting that personal jurisdiction analysis includes results of

conduct when conduct "set[s] in motion a chain of reasonably foreseeable events resulting in" the tortious acts). A principal can not tell an agent to burn a forest and escape liability by withdrawing the agency relationship after the first tree begins to burn.

Based on the power of attorney granted to Romero, Enrique Pimienta's contacts with Texas are attributable to Romero for personal jurisdiction purposes. Consequently, the Court has specific personal jurisdiction over Romero based on Enrique Pimienta's Texas contacts.

Romero nevertheless contends that the Court lacks personal jurisdiction over Romero despite Enrique Pimienta's extensive contacts. Romero contends that Enrique's power of attorney was invalid with respect to the Interamericas Companies' conduct because a director may not grant another a power of attorney to serve in their place as a director. This defense is largely irrelevant. The issue on personal jurisdiction is not whether the power of attorney was used in accordance with Texas law. The issue is whether Romero—in executing the power of attorney—could reasonably expect to be haled into a United States forum court. Romero may be able to assert this issue as a substantive defense to the complaint against him. However, it does not serve as a defense to the question of personal jurisdiction.[7]

Although the Court principally finds jurisdiction based on Romero's agency relationship with Enrique Pimienta, the Court alternatively finds that Romero's non-agency contacts with the United States are also sufficient to establish specific personal jurisdiction. Romero participated in substantial transactions in the United States through his dealings with the Interamericas

---

[7] Defendants also note that a corporation's contacts with a forum state can not be attributed to corporate fiduciaries and investors for personal jurisdiction analysis. *Stauffacher v. Lone Star Mud, Inc.*, 54 S.W.3d 810, 815-16 (Tex. App.—Texarkana 2001, no pet.) ("The general rule is that a court may not assert personal jurisdiction over an individual based on the individual's relation to a corporation unless the corporation is the individual's alter ego."). However, personal jurisdiction over Romero does not arise based upon the Interamericas Companies' contacts. Corporate shield doctrines are inapplicable in this case. The Trustee's suit does not involve a third-party attempting to impose liability on a director by piercing the corporate veil. In the Trustee's suit, the corporation itself, through the Trustee, is bringing suit. Corporate veil doctrine has no application where the corporation itself sues an officer for that officer's individual conduct.

Companies.  Romero invested over $80,000,000 in the Interamericas Companies, most of which were incorporated in the United States.  Romero, on behalf of corporations owned by him, signed numerous loan, security, and restructuring agreements that were executed in Texas, provided that the agreements' terms would be governed according to Texas law, and consented to Texas and United States jurisdiction.   Romero made substantial communications with Interamericas Companies' Advisory Board members through personal visits to Texas and the United States, and telephone communications made in Texas and the United States.   Romero received substantial sums from the Interamericas Companies' Texas bank accounts.   Although this conduct is insufficient to establish general jurisdiction, the contacts all relate to conduct occurring within the Interamericas Companies that forms the basis of the Trustee's specific claims.   Romero's substantial participation in the Interamericas Companies' affairs was purposeful and of a nature that Romero should have perceived that he could be obligated to defend his conduct in a United States Court.

### C. Fair Play and Substantial Justice

In addition to "minimum contacts," the Trustee must demonstrate that this Court's exercise of specific personal jurisdiction over the Defendants would be consistent with notions of "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476; *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) ("If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied.").  Fairness and substantial justice are evaluated by considering five factors:

> (1) the burden on the defendant;
> (2) the forum State's interest in adjudicating the dispute;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

(5) shared interest of the several States in furthering fundamental substantive policies.

*Burger King Corp.*, 471 U.S. at 478 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292; *Wilson*, 20 F.3d at 647. Defendants challenging jurisdiction bear the burden of proving unfairness. *Burger King Corp.*, 471 U.S. at 477.  The burden is not light.  The defendant "must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 477 (emphasis added).

Defendants have not presented a "compelling case" that exercise of this Court's jurisdiction would be contrary to notions of "fairness and substantial justice." Romero alleges that litigating in Texas would be unfair because of his personal circumstances.  Romero is a Mexican national residing in Mexico.  He is unfamiliar with U.S. laws and procedures.  He is over 70 years old.  Defendants' counsel also asserts the majority of documents and witnesses reside in Mexico.

However, several of the Defendants consented to Texas court jurisdiction through the loan agreements discussed earlier.  Moreover, Romero has frequently traveled to Texas and throughout the United States.  Testimony indicated that Romero visited Interamericas Companies' Advisory Board members on several occasions.  Though Romero may be an older man, Romero has offered no evidence of illness or other conditions suggesting travel would be unduly burdensome.  Moreover, contrary to Romero's contentions, documents and key witnesses are in the United States. The language barrier is significant.  However, the barrier will either exist with respect to the Trustee or Romero.  The Court notes that Romero is very ably represented by bilingual counsel.  The Court intends to accommodate the language barrier issues. This factor does not present a compelling justification.

Moreover, the forum's interest in adjudicating the present dispute strongly favors the fairness of this Court's jurisdiction.  The Trustee's adversary proceeding was brought pursuant to federal bankruptcy laws and within a federal bankruptcy case. The United States has a substantial interest in enforcing its laws. *In re Teknek, LLC*, 354 B.R. at 204 ("The adjustment of the debtor-creditor relationship is a federal concern, 28 U.S.C. § 157(b)(2)(O), and one of the policies underlying the substantive law in this area is the notion that a single federal forum ought to have the power to bring before it all matters with respect to a single bankruptcy debtor so that all such matters may be handled more efficiently, consistently, and expeditiously than if they were scattered throughout various courts.").

Defendants have not meet their burden of presenting a compelling case demonstrating that it would be unfair and unjust for this Court to exercise personal jurisdiction over the Defendants.

## Conclusion

The Court denies the Defendants' motion to dismiss for lack of personal jurisdiction with respect to Romero, Minerva, Mar Sur, South Sea, North Sea, Pacific, and Larce.  The Court grants the Defendants' motion to dismiss for lack of personal jurisdiction with respect to Grupo, Palatina, and Flaminia.  A separate order will be issued.

Signed at Houston, Texas, on September 11th, 2007.

MARVIN ISGUR
United States Bankruptcy Judge